UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IVA ROBBINS, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 14-1521 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 2, 4, 11, 12 |
| | : | | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, | : : : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

Iva Robbins and her adult son, Ivan Robbins, are recipients of housing vouchers issued under the Housing Choice Voucher ("Section 8 Program"), which provides qualifying applicants with vouchers to aid with rent payments. Ms. Robbins utilized her housing vouchers to rent an apartment unit in Alexandria, Virginia. Upon a dispute with the Alexandria landlord over utilities, Ms. Robbins requested that her local public housing authority ("LPHA") "port out" Ms. Robbins and her son to another unit in Fairfax, Virginia. The LPHA denied Ms. Robbins's request because she was not in good standing with her current landlord in Alexandria. Ms. Robbins submitted additional "port out" and hearing requests but again was denied.

Ms. Robbins contacted the United States Department of Housing and Urban Development ("HUD") about alleged non-compliance by her LPHA with requirements of the Section 8 Program, but she did not find the relief she sought, so she filed the instant action with this Court. In her complaint and accompanying request for a preliminary injunctive order, Ms.

Robbins requests that the Court remedy her "living condition of homelessness." Compl., ECF No. 1, ¶ 68; Mot. Injunction Order, Sept. 5, 2014, ECF No. 2. She also asserts that HUD is responsible for her "adverse living condition" because she "participates in [its] federal program" and HUD failed to require the Alexandria Redevelopment and Housing Authority ("ARHA") to afford her a hearing and vouchers to port out of Alexandria. Compl., ¶¶ 4-6, 47-59.

In response, HUD filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), and failure to state a claim upon which relief can be granted, under Rule 12(b)(6). HUD argues that Ms. Robbins's claims should be dismissed because HUD is not the appropriate party to bring these claims against. Def's Mot. Dismiss, Sept. 15, 2014, ECF No. 4, 2. For the reasons explained below, the Court grants HUD's motion to dismiss and denies Ms. Robbins's motion for preliminary injunction on the basis of standing, not subject matter jurisdiction.[1]

## II. FACTUAL BACKGROUND

### A. The Section 8 Housing Program

Although HUD funds the Section 8 federal housing subsidy program, *see* 42 U.S.C. § 1437(f); 24 C.F.R. § 982.151, the Section 8 Program is ultimately administered by state and local housing authorities, *see* 24 C.F.R § 982.51, meaning that individuals apply for Section 8 vouchers directly with their LPHA, not HUD. *See id.* § 982.201. Once accepted into the Section 8 Program, the LPHA approves a voucher recipient's chosen housing unit and then enters into a housing assistance payments contract for the duration of the voucher recipient's lease with the housing unit. *See id.* § 982.302, *id.* § 982.305. The LPHA also determines the amount of

---

[1] Because this Court dismisses the action for lack of standing, the Court does not address alternative grounds of dismissal raised by HUD. Specifically, the Court does not address lack of subject matter jurisdiction, whether sovereign immunity would extend to an action for injunction, or HUD's 12(b)(6) argument for failure to state a cause for which relief may be granted.

monetary benefits a qualifying individual receives under the Section 8 Program. *See id.* § 982.505. The Section 8 participant is responsible for any amount owed above the value of her voucher. *See id.* § 982.451. HUD is not a party to the housing assistance payments contract and does not determine individual benefit amounts under the program. *See id.* § 982.305; *id.* § 982.505.

A Section 8 participant can request to move from one housing unit to another, or even be "ported out" to a unit in another LPHA's jurisdiction, so long as the participant is in good standing with their current unit's landlord. *See id.* § 982.314, *id.* § 982.552. The LPHA can then determine whether to approve or deny a Section 8 participant's port out request. Federal regulations that provide the minimum due process requirements under the Section 8 Program, *see Lowery v. D.C. Hous. Auth.*, No. 04-1868, 2006 WL 666840 at *2 (D.D.C. Mar. 14, 2006), do not mandate that the LPHA afford a Section 8 participant a hearing when denying a port out request. 24 C.F.R. § 982.555.

### B. Ms. Robbins's Claims

Ms. Robbins's claims appear to arise out of a landlord-tenant dispute with Kettler Management ("Landlord") in Alexandria, Virginia. Ms. Robbins, after receiving a Section 8 voucher, entered into a lease with the Landlord, with ARHA as the responsible LPHA. The initial lease represented that water in the unit was heated by natural gas and would be paid by the Landlord. The tenant, Ms. Robbins, was responsible for electric service to the unit. Compl., Ex. 1, 52. Contrary to the lease obligations, Ms. Robbins failed to transfer electric utility service to her name and did not pay for electric service to the unit. ARHA Letter 1, Mar. 18, 2014, ECF No. 1, Ex. 1, 39-40 ("ARHA Letter 1"); Fields of Old Town Letter, Mar. 26, 2014, ECF, No. 1, Ex. 2A. Ms. Robbins alleged that the Landlord breached the lease because the water heater in the

3

unit was electrical, not gas, and she therefore requested to be "ported out" of Alexandria to another facility in Fairfax, Virginia. Compl., Ex. 1, 31, 46-47.

The ARHA retroactively increased Ms. Robbins's utility allowance and made an additional housing assistance payment to the Landlord to reconcile the difference between the electric hot water and gas hot water allowance. ARHA Letter 1. The ARHA also advised Ms. Robbins that under the lease she was responsible for the remainder of the electric utilities. *Id.* Ms. Robbins, unsatisfied with the response, repeatedly requested a hearing, which the ARHA denied because they had not taken adverse action against her. Compl., Ex 1, 15. The ARHA follows the guidelines HUD established in 24 C.F.R. § 982.555 to determine when the LPHA must afford participants hearings. Its policy states that the ARHA "will only offer participants the opportunity for an informal hearing when required by the regulations." Pls.' Answer, ECF No. 8, Ex. 3. The ARHA clarified that they denied Ms. Robbins's "port out" request because the Landlord indicated that Ms. Robbins owed a balance on her rental account for utilities and attorneys' fees. Compl., Ex. 1, 5. Should Ms. Robbins resolve the landlord-tenant dispute, the ARHA stated it would process her paperwork to be ported out to Fairfax housing. Compl., Ex. 1, 21.

Nonetheless, Ms. Robbins continued not to pay rent, utilities, and late fees, so the Landlord advised her that she was in breach of the lease and had five days to pay the total or vacate the unit. Defs.' Mot. Dismiss, Ex. 3. After this letter, the ARHA contacted Ms. Robbins to schedule the required annual re-examination of Section 8 participants and to advise that a failure to comply with requirements would result in termination of benefits on October 31, 2014. Compl., Ex. 1, 2. The letter also provided information for an appeals process of any potential termination decision. ARHA Letter 2, July 10, 2014, ECF No. 4, Ex. 1. Ms. Robbins asserts she

has not received the annual re-examination inspection, and alleges she has not received a termination letter from the ARHA. Compl. ¶ 160-62.

Ms. Robbins now alleges that the Landlord was working in concert with ARHA by "endorsing their fraudulent practice," Compl., Ex. 1, 33, and she contacted HUD to request a compliance review of the ARHA. *See* Compl., Ex. 1, 34, 36-37; HUD Letter, Sept. 3, 2014, ECF No. 8, Ex. 1 ("HUD Letter"). HUD replied that based on a review of the documents provided, it recommended that Ms. Robbins resolve the utility dispute by working with her Landlord and the ARHA. *Id.* HUD explained that the ARHA was acting properly in seeking to enforce her obligations pursuant to 24 C.F.R. § 982.404(b), and warned Ms. Robbins that her failure to pay for electric service could result in termination of benefits. *Id.* HUD also clarified that pursuant to applicable regulations, the ARHA was not required to afford Ms. Robbins a hearing on the denial of her "port out" requests. *Id.*

Ms. Robbins filed this action on September 5, 2014, seeking injunctive relief and alleging that she and her son fulfilled all their obligations under the Section 8 Program. Compl., ¶ 46. Ms. Robbins asks the Court to require HUD to intervene in her dispute with the ARHA and her Landlord; specifically, Ms. Robbins seeks the Court to direct HUD to require that the ARHA provide an informal hearing, and provide a voucher for Ms. Robbins to port out to another LPHA. Compl., ¶ 163. HUD filed a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted on the basis that none of the defendants, neither HUD nor the Secretary for HUD, are the appropriate defendants for Ms. Robbins to bring her claim against. Defs.' Mot. Dismiss, 1-5.

### III. LEGAL STANDARD

It is well established that "[u]nlike state courts of general jurisdiction, federal district courts have limited jurisdiction." *Daniel v. D.C. Pub. Hous. Auth.*, No. 10-0613, 2010 WL 1687869, at *1 (D.D.C. Apr. 20, 2010); *see also Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction [possessing] only that power authorized by Constitution and statute [.]"). Jurisdiction is such a fundamental requirement for a federal district court to hear a case that the Court has "an independent obligation to be sure of [its] jurisdiction." *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002). "Before a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims." *Cornish v. Dudas*, 715 F. Supp. 2d 56, 60 (D.D.C. 2010) (quoting *Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F. Supp. 2d 22, 24 (D.D.C. 2009)).

#### A. Standing

"Standing under Article III is jurisdictional. If no petitioner has Article III standing, then this court has no jurisdiction to consider these petitions." *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) *cert. denied*, 133 S. Ct. 2880 (U.S. 2013) and *cert. denied*, 133 S. Ct. 2881 (U.S. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). To establish Article III standing, a party must meet three requirements: (1) that she has "suffered an injury in fact," (2) that the injury is "fairly traceable to the challenged action of the defendant," and (3) that it is "likely, as opposed to speculative, that the injury will be redressed by a favorable decision" by this Court. *Lujan,* 504 U.S. at 560-61 (internal quotation marks, alterations, and citations omitted).

The burden to prove standing rests with the plaintiff and "varies with the procedural context of the case. At the pleading stage, 'general factual allegations of injury resulting from the

defendant's conduct may suffice'. . . ." *Sierra Club*, 292 F.3d at 898-99 (citing *Lujan,* 504 U.S. at 561). When the plaintiff has not met her burden of showing that the court has jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

## IV. ANALYSIS

Standing is a threshold jurisdictional question. *See Lujan,* 504 U.S. at 560. Even assuming *arguendo* that Ms. Robbins suffered an injury in fact through her present living condition, Ms. Robbins has failed to prove causation and redressability. These two elements of Article III standing are closely linked in this case because "a federal court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). The Court acknowledges the severity of Ms. Robbins's health conditions, but because Ms. Robbins has not met her burden of establishing standing, the Court must dismiss the case for lack of jurisdiction.

### A. Causation

As to causation, the complaint does not state a specific nexus tying any action or inaction by HUD to Ms. Robbins's "condition of homelessness." "Causation, or traceability, examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, [caused] the particularized injury of the plaintiff; [thus] causation focus[es] on whether a particular party is appropriate." *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (internal quotations and citations omitted). In her complaint, Ms. Robbins asserts that HUD's failure to order that the ARHA provide her with an informal hearing and with a voucher to port out of Alexandria contributed to and "escalated [her] living condition of

7

homelessness." Compl., ¶¶ 49, 53. She alleges that HUD's decision not to force the ARHA to provide her an informal hearing over the denied port out request violates due process, but no such hearing is required under the governing regulations. *See* HUD Letter; 24 C.F.R. § 982.555.[2]

The causation standard asks for a "fairly traceable" injury and not an attenuated connection. *Lujan,* 504 U.S. at 560-61; *Simon*, 426 U.S. at 62. "[T]he presence . . . of third-party links in [a] causal chain [can] independently corroborate that [a party's] claim of causation is 'entirely speculative' and insufficient for standing." *Florida Audubon*, 94 F.3d at 670. At bottom, the cause of the injury that Ms. Robbins seems to allege stems from a disagreement with the ARHA and the Landlord over utilities. HUD is not a party to the housing assistance contracts of Section 8 participants. *See* 24 C.F.R. § 982.305. The lease and housing assistance contract at issue here is no exception: the parties subject to these contracts are Ms. Robbins, her son, her Landlord, and the ARHA. Compl., 8, 41, 52-53, 60-39; ARHA Letter 1. HUD merely funds the Section 8 program but does not make individualized determinations such as the ones about which Ms. Robbins complains. The ARHA is ultimately responsible for administering the program and a participant's status in it. *See* 24 C.F.R § 982.51.

### B. Redressability

Ms. Robbins also fails to satisfy the redressability prong of Article III standing. The "[re]dressability requirement for federal standing examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff . . . . " *Florida Audubon*, 94 F.3d at 663-64 (D.C. Cir. 1996) (internal quotations and citations omitted). "It is substantially more difficult for a petitioner to establish redressability

---

[2] HUD addressed Ms. Robbins's complaint but concluded that the ARHA acted within its authority administering the Section 8 program. HUD Letter.

where the alleged injury arises from the government's regulation of a third party not before the court." *Spectrum Five LLC v. Fed. Commc'ns Comm'n*, 758 F.3d 254, 261 (D.C. Cir. 2014) (internal citations and quotations omitted).

As outlined in the letter HUD sent to Ms. Robbins, this dispute is one between Ms. Robbins, her Landlord, and the ARHA. HUD funds the Section 8 Program, but the party who administers and makes determinations of Ms. Robbins's benefits under Section 8 ultimately is the ARHA, an entity separate from HUD that is not before this Court. *See* 24 C.F.R § 982.201, *id.* § 982.505. Additionally, as previously addressed, HUD cannot require the ARHA to provide Ms. Robbins with an informal hearing regarding the ARHA's denial of her port out requests, nor is there a regulation mandating a hearing for an ARHA's denial of a port out request in the first place. *See id.* § 982.552; HUD Letter. HUD also cannot mandate that the ARHA provide Ms. Robbins with housing vouchers in a new LPHA's jurisdiction after a denied port out request. *See id.* § 982.201, *id.* § 982.201 (the LPHA is responsible for determining if a port out request should be granted or if an individual participant's housing assistance should be terminated).

Ultimately, HUD cannot provide Ms. Robbins relief for the claims she advanced, which are "local law matters over which this Court has no independent jurisdiction." *Patterson v. D.C. Hous. Auth.*, 691 F. Supp. 2d 117, 119 (D.D.C. 2010).[3]

---

[3] Ms. Robbins filed a motion to expedite, ECF. No 11, and a motion to strike, ECF No. 12. Because this Court disposes of the matter for lack of standing, the motions to expedite and strike are dismissed as moot.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss and denies Ms. Robbins's motion for preliminary injunction because she lacks standing to bring the claim.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 27, 2014                                                                                  RUDOLPH CONTRERAS
                                                                                                                             United States District Judge